IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ALAN MELA and KAREN MELA,              )
                                       )
            Plaintiffs,                )    TC-MD 110455N
                                       )
      v.                               )
                                       )
MULTNOMAH COUNTY ASSESSOR,             )
                                       )
            Defendant.                 )    **DECISION**

Plaintiffs appealed the real market value of property identified as Account R268074

(subject property) for the 2009-10 and 2010-11 tax year.  The court dismissed Plaintiffs' appeal

of the 2009-10 tax year in an Order issued September 30, 2011.  A trial was held by telephone on

February 9, 2012.  Alan Mela (Mela) appeared and testified on behalf of Plaintiffs.  Lindsay

Kandra appeared on behalf of Defendant.  Plaintiffs' Exhibits 1, 2, 4, and 5 were received

without objection.  Defendant objected to Plaintiff's Exhibit 3, two pages from an appraisal

report, stating that the entire appraisal report was not submitted as evidence and the person who

prepared the report was not available to testify at trial.  The court noted that, even if Plaintiffs'

Exhibit 3 were admitted into evidence, it could not be given much weight for the reasons

identified by Defendant.  Defendant did not submit any exhibits.

## I.  STATEMENT OF FACTS

The subject property is a multi-tenant office building located in Portland, Oregon.  The

2010-11 real market value was reduced to $1 million by the board of property tax appeals

(BOPTA).  The 2010-11 maximum assessed value is $833,840.  Plaintiffs request a 2010-11 real

market value of $539,070 (Ptfs' Ltr, Aug 26, 2011; Order, Sep 30, 2011.)  At trial, Mela revised

Plaintiffs' requested real market value to, approximately, $735,000.

Prior to 2010, Plaintiffs' three largest tenants included the American Diabetes Association (ADA), 33 percent; Marvin, Chorzempa, & Larson, P.C., 24 percent; and the Oregon Coalition Against Domestic Violence (OCADV), 13 percent. (Ptfs' Ltr, Aug 26, 2011; Ptfs' Ex 2.) Mela testified that, prior to 2010, the subject property received a property tax exemption based on its leases to two non-profit organizations. Mela testified that, in 2010, all three tenants declined to renew their leases for space in the subject property and moved out. (*See id.*) He testified that all three tenants moved out because of Multnomah County's plan to condemn the subject property at some point in 2010 for the Sellwood Bridge Project. (*See id.*) Mela testified that both Plaintiffs and the subject property manager, Kidder Matthews, communicated openly with the tenants about the pending condemnation. (*See generally* Ptfs' Ex 1, 2.) He provided emails that were sent to tenants in early 2010 detailing information about the pending condemnation, timelines, and other resources. (*See* Ptfs' Ex 1, 2.)

Mela testified that planning for the Sellwood Bridge Project began in 2006. He testified that, as of October 2008, five alternatives had been identified, each of which would involve condemnation of the subject property. Mela testified that, by 2009, the preferred alternative had been identified and it involved condemnation of the subject property. (*See* Ptfs' Ex 1 at 2 (letter from Michael Eaton, Project Manager, to Plaintiffs stating "Alternative D is the locally preferred alternative. In the Draft EIS it was determined that your property would be needed to build the project under that Alternate. We do not anticipate any change in this determination in the Final EIS for any reason. However, under the [record of decision], no property will be identified for actual acquisition.") *id.*) Mela testified that the record of decision (ROD) was originally targeted for April 2010, and was expected for the spring or summer of 2010. He testified that the ROD was issued in September 2010, and Plaintiffs "handed over" the subject property March 15,

2011. Mela testified that the subject property was appraised in November 2010 because of the condemnation and that the appraiser determined net operating income of $167,678. (*See* Ptfs' Ltr at 1, Jan 27, 2012.) He stated that the appraisal was previously provided to Multnomah County, but he did not provide it the court.

Mela testified that, although the ROD was not issued until September 2010, it was clear to Plaintiffs and their tenants by January 2010, that the subject property would be condemned. Mela presented a few theories in support of Plaintiffs' requested real market value. He determined a real market value of $539,070 by subtracting the percentage attributable to the three largest tenants (70 percent) from the 2010-11 roll real market value of $1,769,900.[1] (Ptfs' Ltr Aug 26, 2011.) Mela noted that the rent attributable to the three largest tenants was $13,891 per month, or "$166,692 annually," and that the net operating income would be $986 if that rent were subtracted from the net operating income of $167,678 stated in the November 2010 appraisal. (Ptfs' Ltr at 2, Jan 27, 2012.) Finally, Mela testified that a real market value of approximately $735,000 is indicated if only the rent paid by the ADA and OCADV are subtracted from the net operating income stated in the November 2010 appraisal.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash
> that could reasonably be expected to be paid by an informed buyer to an informed

---

[1] $1,796,900 – (70% x $1,796,900) = $539,070. (Ptfs'Ltr, Aug 26, 2011.)

seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[2]

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 48, 252 (2003). All three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property. OAR 150-308.205-(A)(2)(a). The approach of valuation to be used is a question of fact to be determined on the record. *Pacific Power and Light Co. v. Dept. of Rev.*, 286 Or 529, 533 (1979).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.* (*Poddar*), 18 OTR 324, 332 (2005) (citations omitted). Competent evidence includes "testimony from licensed professionals such as appraisers, real estate agents[,] and licensed brokers." *Hausler v. Multnomah County Assessor*, TC-MD No 110509D (Nov 15, 2011). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has

/ / /

---

[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

During closing arguments, Defendant argued that Plaintiffs have not met the burden of proof in this case because Plaintiffs have not presented evidence of the subject property's real market value based on any of the three approaches of value. Mela stated during his closing statement that he is familiar with the three approaches of value, noting that there are no "comparable sales of condemned properties." He stated that he thinks the November 2010, appraisal of the subject property considered the three approaches of value and relied on the income approach. Mela's theory of value in this case is based, in part, on the net operating income of the subject property concluded in the November 2010, appraisal. Unfortunately, Plaintiffs did not provide the complete November 2010, appraisal and the appraiser who prepared that report did not testify. Mela testified persuasively that the pending condemnation affected Plaintiffs' leases with existing tenants. However, that information alone does not provide a sufficient basis upon which the court can determine the real market value of the subject property as of January 1, 2010. Plaintiffs failed to present the court with "competent evidence" of the real market value of the subject property as of January 1, 2010, and have not, therefore, met their burden of proof.

III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court finds that Plaintiffs have not met their burden of proof. The court has not received competent evidence by which to determine the 2010-11 real market value of the subject property. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of the real market value of property identified as Account R268074 for the 2010-11 tax year is denied.

IT IS FURTHER DECIDED that Plaintiffs' appeal of the 2009-10 tax year is dismissed.

Dated this ___ day of April 2012.

ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on April 11, 2012. The Court filed and entered this document on April 11, 2012.*